1

2

3                            **UNITED STATES DISTRICT COURT**

4                                **DISTRICT OF NEVADA**

5                                      **\* \* \***

6   NOBUYUKI SAKAKIBARA,                    )
                                            )
7                   Plaintiff,              )
                                            )        2:09-cv-02000-HDM-LRL
8   v.                                      )
                                            )        **O R D E R**
9   SPECTRUM GAMING GROUP, LLC, et al.,     )
                                            )
10                  Defendants.             )
                                            )
11  _____    )

12          Before the court is plaintiff's Motion to Compel Defendant Spectrum Gaming Group, LLC

13  ("Spectrum") to Comply with Fed. R. Civ. P. 26(a)(1)(A)(iv) and Produce Its Insurance Agreement

14  (#37).  The court has considered the motion (#37), defendant's Opposition (#39), and plaintiff's Reply

15  (#43).  Plaintiff also seeks sanctions pursuant to Rule 26(g)(3) and Rule 37(a).  Prior to filing its

16  opposition, Spectrum provided the insurance agreement.  Accordingly, that portion of plaintiff's motion

17  is moot.  All that is before the court is plaintiff's request for sanctions in the form of attorney's fees and

18  costs for alleged discovery abuses.

19          On December 18, 2009, the parties conducted their Rule 26(f) conference and agreed to make

20  Rule 26(a) initial disclosures by January 19, 2010.  *See* Dkt. (#24) at 2.  On January 18, 2010, counsel

21  for plaintiff, Brian Reeve ("Reeve"), emailed counsel for the Spectrum defendants, Mitchell Langberg

22  ("Langberg"), to inquire whether Spectrum was going to provide insurance information pursuant to Rule

23  26(a)(1)(A)(iv).  Reeve Aff. at ¶ 5.  The following day Langberg replied that Spectrum would not be

24  identifying any insurance information on the ground that there was no policy with potential coverage

25  for plaintiff's claims related to defamation and the Fair Credit Reporting Act.  *Id.* at ¶ 6; Langberg Decl.

26  (#40) at ¶ 2.  On January 20, 2010, Reeve and Langberg conferred telephonically on the issue.  Mot.

(#37) at 2-3. Reeve drew Langberg's attention to plaintiff's negligence claims under the Fair Credit Reporting Act, and Langberg agreed to re-evaluate his position regarding potential insurance coverage. Langberg Decl. (#40) at ¶ 3.  Defendant served its initial disclosures the next day, January 22, 2010.

On January 25, 2010, the court held a Special Scheduling Review to resolve scheduling disputes between the parties.  The insurance policy issue was not addressed at that time.  However, after the hearing, another of plaintiff's counsel, Michael Stein ("Stein"), asked Langberg if he was going to produce Spectrum's insurance information.  Stein Aff. at ¶ 6.  Langberg said he was still looking into whether there was potential coverage for plaintiff's claims.  *Id.* at ¶ 7.  Stein responded that Langberg's need to continue to analyze the issue demonstrated that there "may be" coverage, and thus the insurance agreement should be produced.  *Id.* at ¶ 8.

On February 12, 2010, Reeve and Langberg spoke again regarding production of the insurance policy.[1]  Langberg again represented that he was looking into the coverage issue, and wanted insurance counsel to reevaluate the policy.  Langberg Decl. (#40) at ¶ 5.  Langberg attests that he said it might be better to simply produce the policy, regardless of coverage potential, to move the matter along; but he would first need to speak with his client, who was abroad until the first week of March, 2010.  *Id.* at ¶ 6.  Langberg made it clear that he couldn't say whether the policy would be produced in early March.  *See id.*  Langberg indicated that if he determined, after speaking with the "appropriate people," that there was a potential for coverage, he would produce the policy.  Mot. (#37) at Exh. C.  Reeve indicated that plaintiff would likely file a motion to compel.  Langberg pointed out that even if plaintiff did so the next day, the motion would not be heard until after Langberg's client returned, at which time the issue may be resolved.  Langberg Decl. (#40) at ¶ 7.  On March 3, 2010, plaintiff filed the instant Motion to Compel (#37), in which he also seeks sanctions in the form of attorney's fees pursuant to Rules 26(g)(3) and 37(a).

Defendant maintains that since plaintiff need only have waited a few more days to find out

---

[1] Counsel disagree as to who initiated the call.

2

whether the policy would be produced, the motion to compel was filed prior to any need for court intervention.  Accordingly, it is argued, because plaintiff did not meet the good faith meet and confer requirement of Rule 37 and the local rules, sanctions should not be awarded.  Plaintiff maintains that it spoke with defendant on the issue at least three times, and defendants never said they would produce the policy in early March – only that they might.  Reply (#43) at 6.  Accordingly, it did meet the requirement.  Critically, plaintiff further points out that defendant did not specifically oppose that portion of the motion (#37) that called for sanctions pursuant to Rule 26(g)(3) on grounds that "Spectrum Gaming knew that it had insurance coverage but simply chose not to disclose the insurance agreement(s)."  Mot. (#37) at 7.  No meet and confer requirement is attached to a motion for Rule 26(g) sanctions.

Rule 26(a)(1) provides that initial disclosures are due fourteen days after the parties hold their Rule 26(f) conference.  With its initial disclosures, a party must include "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."  Rule 26(a)(1)(A)(iv).  The purpose of requiring the production of insurance documents is to permit counsel for all parties to make a realistic evaluation of the case, so that settlement and litigation strategy are based on knowledge of the size of the fund that is available for the satisfaction of any judgment obtained, rather than speculation.

Rule 26(g) "allows the court to impose sanctions on the signer of a discovery response when the signing of the response is incomplete, evasive, or objectively unreasonable under the circumstances." *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 198 F.R.D. 508, 515 (N.D. Iowa 2000).  Pursuant to Rule 26(g)(1), a party or attorney of record must sign each disclosure, certifying that the disclosure is complete and correct at the time it is made.  Rule 26(g)(3) provides, "[i]f a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."

Spectrum did not provide its insurance policy with its initial disclosures.  Nor did it do so for

two months thereafter, reasoning that it needed time to determine whether the policy applied to plaintiff's claims. As plaintiff argues in its Reply (#43), however, the policy provides coverage for "Wrongful Acts," which are defined as "any actual or alleged negligent act, error, or omission or breach of duty committed or alleged to have been committed, or for failure to render such Professional Services as are customarily rendered in the profession of the Insured..." Reply (#43) at Exh. 1, ¶ III(h)(I). Plaintiff's Amended Complaint alleges, among other things, that defendant acted negligently and violated its statutory duty under the Fair Credit Reporting Act when it conducted its background checks. Hence, it appears the policy, on its face, *may be* applicable to plaintiff's claims. Spectrum was thus required to produce it – even if application of the policy is or would be an issue in dispute. *See* Rule 26 advisory committee's notes. Despite counsels' conversations about the applicability of the insurance policy to plaintiff's negligence claim prior to defendant serving its initial disclosures, defendant certified that "is not currently aware of any insurance agreement applicable to this action." *See* Reply (#43) at Exh. 2.

The court finds defendant's certification to fall below an objective standard of reasonableness. *See Aecon Bldgs., Inc. v. Zurich North Amer.*, 2008 U.S. Dist. LEXIS 65784 at *14 (W. Dist. Wash., August 20, 2008) (finding sanctions under Rule 26(g) appropriate where plaintiff failed to, without substantial justification, provide its insurance policies with its initial disclosures). Even a cursory perusal of the "Wrongful Acts" language indicates that the policy may apply to plaintiff's claims. Defendant should have included the policy with its initial disclosures and offers no substantial justification for its failure to so. That defendant wanted to further investigate the applicability of the policy does not justify withholding it. *See* Rule 26(a)(1)(E). Finally, defendant did not oppose plaintiff's arguments regarding improper certification and Rule 26(g)(3) sanctions. Hence, plaintiff's representations are unchallenged. For that reason, and for good cause otherwise shown, defendant shall be ordered to pay the reasonable attorney's fees and costs incurred by plaintiff in bringing the instant motion (#37) as a sanction.

. . .

4

1    Accordingly, and for good cause shown,

2    IT IS ORDERED that plaintiff's Motion to Compel Defendant Spectrum Gaming Group, LLC

3    to Comply with Fed. R. Civ. P. 26(a)(1)(A)(iv) and Produce Its Insurance Agreement (#37) is

4    GRANTED to the following extent: Defendant, Spectrum Gaming Group, LLC, shall, not later than

5    August 6, 2010, pay to plaintiff's counsel the sum of $750.00 as the reasonable attorney's fees incurred

6    in making this motion.

7    DATED this 22nd day of July, 2010.

8

9    _____

10   **LAWRENCE R. LEAVITT**
     **UNITED STATES MAGISTRATE JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26